```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

 ROBERT D. FRANCIS,

                        Plaintiff,
                                                  MEMORANDUM & ORDER
                                                  20-CV-642(EK)(TAM)
            -against-

 CITY OF NEW YORK, KERRY R. SWEET,
 JOSEPH REZNICK, BRIAN H. O'NEIL,
 THOMAS E. MOLLOY, JOSEPH F. PROFETA,
 JOHN A. ORECCHIA, JOEL P. VARUGHESE,
 JOHN MONTAPERTO, and ALEX NULMAN

                        Defendants.

--------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Robert Francis, a former New York City Police detective, claims that he was the subject of a conspiracy between the police departments of New York City and Rockville Centre, New York.  The alleged objects of this conspiracy were to frame him for certain crimes and to pressure him to resign from his position.  Francis brought suit against the City of New York and several individual police officers, asserting claims under Sections 1981, 1983, and 1985, for conspiracy to commit false arrest, malicious prosecution, and failure to intervene, accompanied by a *Monell* claim and a pendent state-law tort claim.  The defendants now move for summary judgment.

        For the reasons that follow, that motion is granted.

## I. Background

### A. Facts[1]

Francis asserts claims against a number of NYPD officers — Joseph Reznick, Brian H. O'Neil, Kerry R. Sweet, Joseph F. Profeta, John A. Orecchia, Joel P. Varughese, John Montaperto, Alex Nulman, and Thomas E. Molloy — as well as the City itself.

Francis is a former NYPD officer. Pl. 56.1 Resp. ¶ 10. He held the rank of Detective from 2007 until his employment terminated in 2017. *Id.* ¶ 11.

#### 1. The Events of March 25, 2017

On March 25, 2017, police officers with the Rockville Centre Police Department ("RCPD") responded to a 9-1-1 call reporting that an African-American male had been observed trespassing on the caller's driveway and backyard. *Id.* ¶ 13. When officers arrived at the address around 11:00 p.m., they encountered Francis, *id.* ¶ 12, who fit the caller's description and was in the rear yard of another residence on the same street. *Id.* Francis informed them that he was in the area to

---

[1] The facts in this order are drawn from the parties' submissions in connection with the motion for summary judgment, including Defendants' Local Rule 56.1 Statement ("Def. 56.1" (ECF No. 67)) and plaintiff's response to this statement ("Pl. 56.1 Resp." (ECF No. 69)). The court views the facts in the light most favorable to the plaintiff. Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein.

meet a female friend named Tameeka Campbell, but that he did not know her address.  *Id*. ¶ 15.  Francis was off duty.  *Id*. ¶ 12.

The RCPD officers took Francis to the stationhouse for further questioning, *id*. ¶ 16, and he signed a *Miranda* waiver.  *Id*. ¶ 17.  He fit the description of a man described in four prior complaints the RCPD had received — all concerning incidents in which a man was observed pointing a flashlight at his groin and masturbating in the backyards of homes in view of teenage girls inside.  *Id*. ¶ 18.  Following questioning, Francis signed a confession admitting that he committed those prior acts and attesting that he had been planning to engage in a similar act that evening.  *Id*. ¶ 19.  Francis admits that he signed the confession but denies that he read it before signing it.  *Id*.

The RCPD charged Francis — via an appearance ticket — with endangering the welfare of a child, public lewdness, and criminal trespass.  *Id*. ¶ 20.  He was released on $50 bail.  *Id*. ¶ 22.

2.   NYPD Administrative Proceedings

The next day, the NYPD suspended Francis without pay and began preparing internal administrative charges against him.  Pl. 56.1 Resp. ¶¶ 24-25.  In early April, while under suspension, Francis applied for a "vested interest retirement," which provides limited benefits based on the retiree's years of service.  *Id*. ¶ 26.  A vested interest retirement differs from

3

a "service retirement," which is available after twenty years of service, in that it does not come with greater entitlements such as terminal leave benefits and variable supplemental fund benefits. *Id.* Francis signed documents acknowledging that by taking a vested interest retirement, he would not be entitled to the benefits of a service retirement. *Id.* ¶ 26.

A week later, the NYPD held a hearing on the administrative charges. *Id.* 27. Francis denied committing the acts he was accused of and asserted that the RCPD coerced him into signing the confession. *Id.* ¶ 28. He again asserted that he was present in Rockville Centre to meet a woman named Tameeka Campbell and provided screenshots of a text conversation as proof. *Id.* ¶ 30; ECF No. 66-6, at 7. He "claimed he did not have the actual messages because his phone automatically deletes texts." *Id.* But the number he provided did not belong to a woman named Campbell. Instead, it came back to a woman named Lakeish Chang, who denied any plans to meet Francis that night (and also claimed that Francis had harassed her on prior occasions). Pl. 56.1 Resp. ¶ 30. Chang also told investigators that she never sent Francis any texts. ECF No. 66-6, at 8.

Following Francis's testimony at the hearing, the NYPD supplemented its administrative charges to allege that he made false statements under oath. *Id.* ¶ 31. Before he could be

4

served with the charges, Francis took his vested interested retirement, officially departing the NYPD. *Id*. ¶ 32.

### 3. Criminal Proceedings

According to a Certificate of Disposition from the criminal court in Nassau County, Francis was tried and found guilty of trespass on November 27, 2018, after a bench trial. ECF No. 66-5. He was sentenced to one year of conditional discharge and $320 in fines. *Id*. The summary judgment record does not indicate whether the remaining charges against him were dismissed or whether he was acquitted of them.

**B. Procedural History**

Francis originally filed his complaint in state court, proceeding *pro se*. Pl. 56.1 Resp. ¶ 1. Defendants removed, citing federal question jurisdiction. *Id*. ¶ 2. Francis has since obtained counsel and filed two amended complaints. *Id*. ¶ 3-4; ECF Nos. 15, 20.

Despite being represented, Francis has not filed a memorandum of law in opposition to the defendants' motion. Instead, he filed a response to the Defendants' Local Rule 56.1 Statement, ECF No. 69, two exhibits to that response, ECF Nos. 68-1, 68-2, and an unsigned affidavit. ECF No. 68. "[F]actual assertions" made in an "unsworn letter" are "properly disregarded by the court" at the summary judgment stage. *U.S. v. All Right, Title and Interest in Real Property and*

5

*Appurtenances*, 77 F.3d 648, 657-58 (2d Cir. 1996); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) ("This statement, being unsworn, does not meet the requirements of [Rule] 56(e) . . . .").[2]

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In performing this analysis, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

The moving party may establish that there is no genuine dispute "by showing that little or no evidence may be

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

6

found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id*.

### III. Discussion

For his federal claims to succeed, Francis must "prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Francis has failed to adduce evidence sufficient to show a genuine dispute on the question of whether he has suffered a violation of his constitutional rights; thus, none of his federal claims can succeed. *Id*.

A. **Conspiracy to Commit False Arrest and Malicious Prosecution**

Francis claims that the NYPD conspired with the RCPD to falsely arrest and maliciously prosecute him in violation of

7

his Fourth Amendment rights. *See* Complaint, ECF No. 20, ¶¶ 308-9, 312-12. To prove a Section 1983 conspiracy, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). This requires the plaintiff to adduce evidence that he suffered "an actual violation of constitutional rights." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Here, there is no evidence to show either an actual violation or Francis' rights or a conspiracy between the RCPD and the NYPD to violate them.

1. Actual Violation of Rights

Francis has not shown that he suffered from false arrest or malicious prosecution. He was convicted of the trespassing charge, and the defendants have established, through uncontroverted evidence, probable cause to prosecute him on the remaining charges. In "actions asserting false arrest, false imprisonment, or malicious prosecution . . . the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986). Likewise, existence of probable cause is a complete defense to false arrest and malicious prosecution claims. *Jenkins v. City of New York*, 478 F.3d 76,

8

84 (2d Cir. 2007); *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer,* 63 F.3d at 119. The "probable cause standard in the malicious prosecution context is slightly higher" and requires "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury,* 721 F.3d at 95. But "[i]f probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 Fed. App'x 48, 50 (2d Cir. 2007).

The RCPD found Francis in someone else's backyard at 11:00 p.m., carrying but not using a flashlight, after a neighbor called 9-1-1. *Id*. ¶ 12-13. The arresting officers were aware of four prior, similar incidents: a man standing in the dark in the backyards of houses in the Rockville area, holding a flashlight to illuminate his genitals as he masturbated in front of teenage residents. *Id*. ¶ 18; ECF No. 66-3, 26-38.

At the stationhouse, Francis waived his *Miranda* rights and signed a written confession to all four incidents.

9

*Id.* ¶ 19-20. The confession stated that on the night of his arrest he "had been out walking through yards on Sherman Ave looking for someone in a house to masturbate to." ECF No. 66-4, at 16. The confession also explained that he had been meeting with a psychiatrist for the past year and had "resorted to masturbating in public (rear yards) while watching women that are inside their homes, for almost 1 year, as a way to deal with my stress." *Id.* at 16-17.

Francis admits that he signed the confession. Pl. 56.1 Resp., ¶ 19. In his unsigned affidavit, he argues that the confession did not provide probable cause to charge him with the crimes he confessed to because he was coerced into signing it. ECF No. 68, at ¶ 18. He alleges that he was told that if he "didn't sign the documents that [he] would be suspended and terminated, but that if [he] signed it, [he] would be given a desk appearance ticket and allowed to retire." *Id.*

But to survive a summary judgment motion, Francis must point to *evidence* the confession was coerced. He "must come forward with specific facts showing that there is a genuine issue for trial" on the issue. *LaBounty*, 137 F.3d at 73. He must also provide support for those facts, whether through "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P.

56(c)(1)(A).  Where a party "fails to properly support an assertion of fact," the court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

The Supreme Court has held that an "unsworn [statement] does not meet the requirements of Fed. Rule Civ. Proc. 56(e)."  *Adickes*, 398 U.S. at 158 n.17.  The only support provided by Francis or his attorney for the factual assertion that his confession was coerced comes from Francis' own unsworn affidavit and is therefore not cognizable at the summary judgment stage.  *See All Right, Title and Interest in Real Property and Appurtenances*, 77 F.3d at 657-58 (factual assertions in an unsworn letter were "properly disregarded by the court" at summary judgment).  Despite a lengthy discovery process in this case — defendants filed their Answer in June 2020 and discovery closed in August 2021 — Francis conducted no depositions, Pl. 56.1 Resp. ¶ 7, and has produced no other evidence in support of this contention.

In the absence of any support for Francis' "conclusory allegation" that his confession was coerced, he has not met his burden to "demonstrate[e] the existence of a genuine dispute of material fact" on the question.  *Brown*, 654 F.3d at 358 (citing *Anderson*, 477 U.S. at 249).  That confession — when buttressed by the 9-1-1 call, the fact that RCPD officers actually witnessed his trespass, and the similarities between

11

his conduct and the four prior incidents — clearly constituted a sufficient basis to justify probable cause to arrest, charge, and prosecute Francis for the crimes to which he confessed.

2. Conspiracy

In any event, dismissal of Francis's conspiracy claim is appropriate because he has failed to evince any evidence establishing an agreement between the NYPD and the RCPD. *Pangburn*, 200 F.3d at 72. Conspiracy claims "containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993).

Here, Francis has failed to offer even "a single fact to corroborate [his] allegation of a 'meeting of the minds' among the conspirators." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). Francis nowhere explains how or why the RCPD and the NYPD conspired against him. In the end, Francis has produced no evidence — only "sheer speculation and wholly conclusory allegations," which are insufficient to withstand summary judgment. *Parisi v. Suffolk Cnty.*, No. 04-CV-2187 (ENV), 2009 WL 4405488, at *12 (E.D.N.Y. Nov. 30, 2009).

B. **Failure to Intervene and Supervisory Liability**

Francis also asserts claims for failure to intervene and supervisory liability against individual NYPD officers,

12

alleging that they could have prevented his false arrest and malicious prosecution. Compl. ¶ 310-11. Both of those claims are premised on an underlying violation of Francis' rights. The duty to intervene only arises when a citizen's "constitutional rights are being violated," *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988), and claims against a defendant-supervisor require evidence that the supervisor "was directly involved in the alleged violation." *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 426 (S.D.N.Y. 2002). Here, the undisputed evidence shows that Francis was neither falsely arrested nor maliciously prosecuted. His claims for failure to intervene and supervisory liability therefore cannot succeed as a matter of law.

**C.   *Monell* Liability**

Francis claims that the constitutional violations he describes arose from an NYPD policy that allowed the department to expedite its administrative proceedings against him. Compl. ¶ 332. Francis argues that this expedited process denied him procedural and substantive due process and equal protection of the law. *Id*.

*Monell* claims depend on evidence of an underlying deprivation of constitutional rights. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Francis' claim as to his alleged false arrest and malicious prosecution therefore

13

cannot succeed, for the reasons set out above; only his due process claim remains.

To establish municipal liability under Section 1983, a plaintiff must demonstrate that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To do so, the plaintiff must first establish the existence of a municipal policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), and then establish a causal connection between the policy and the deprivation of his constitutional rights. *Vippolis*, 768 F.2d at 44.

It is Francis's burden to "set forth specific facts showing that there is a genuine issue for trial" on the question of whether the NYPD's administrative proceedings accorded him inadequate process. *Anderson*, 477 U.S. at 248. Francis has presented no evidence showing that the NYPD's administrative proceedings against him were expedited at all, let alone pursuant to official policy. He has also failed to set forth specific facts showing anything specific about the nature of those proceedings, other than that he was given an opportunity to testify at a hearing. *Id*; *see generally* Pl. 56.1 Resp. In the end, to assert a due-process violation, Francis must allege that he was accorded inadequate process, and that that

shortcoming resulted in a deprivation of his liberty or property. *Reed v. Goertz*, 598 U.S. 230, 236 (2023). And apart from complaining about the expedited nature of the proceedings, Francis has not indcated what process he should have received, but did not.

Regardless, Francis was not fired pursuant to administrative proceedings — he retired before the process could be completed. Pl. 56.1 Resp., ¶ 32. Courts in this circuit have routinely found that NYPD officers who allege that they have been coerced into resignation have access to so-called "Article 78" proceedings, which "satif[y] procedural due process in a case where a New York State employee claims a coerced resignation." *Capul v. City of New York*, No. 19-cv-4313 (KPF), 2020 WL 2748274, at *13 (S.D.N.Y. 2020) (collecting cases).

Ultimately, Francis has failed to present any facts tending to show that he was coerced into retiring from his position with the NYPD as a result of deficiencies in the department's administrative process. His *Monell* claim therefore cannot survive.

## C. Section 1985 Conspiracy Claims

Francis further asserts broad claims under Section 1985 for conspiracy among NYPD and RCPD officers to deprive him of his constitutional rights as they relate to his employment contract, including his right to be free from false arrest and

15

his right to due process.  Compl. ¶¶ 303; 313; 315.  Francis alleges that the conspiracy was motivated in part by racial animus against him as a black man.  *Id*. ¶ 316.  But conspiracy claims under Section 1985 — like claims under Section 1983 — require an underlying constitutional injury, such as a false arrest.  *United Bhd. Of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825 (1983).  No such injury has been shown here and Francis's conspiracy claims therefore cannot survive.

**C.  State Law Negligent Infliction of Emotional Distress**

Having granted the defendants' motions for summary judgment, I decline to exercise supplemental jurisdiction over his remaining state-law claim.  28 U.S.C. § 1367(c)(3).  "[A]s a general proposition," when all federal claims are dismissed before trial, "the state claims should be dismissed as well." *Motorola Credit Cor. V. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004).  Francis has presented no reason to depart from that general rule in this case.

### IV.  Conclusion

For these reasons, the defendants' motion for summary judgment is granted.  Plaintiff's federal claims are dismissed and the court declines to exercise supplemental jurisdiction

16

over his state-law claim.  The Clerk of Court is respectfully directed to close the case.

        SO ORDERED.

                              /s/ Eric Komitee
                            ERIC KOMITEE
                            United States District Judge

Dated:    March 14, 2024
           Brooklyn, New York